IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TAMMIE HEISTER                                                                                    PLAINTIFF

      V.                          Civil No. 2:20-cv-02125-PKH-MEF

KILOLO KIJAKAZI[1], Acting Commissioner,
Social Security Administration                                                                    DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Tammie Heister, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration ("Commissioner") denying her claims for disability insurance benefits ("DIB"), disabled widow's benefits, and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g).

### I.    Procedural Background

Plaintiff filed her application for DIB on May 22, 2017, and for SSI on September 12, 2018, alleging disability since July 16, 2016, due to lupus, post-traumatic stress disorder ("PTSD"), back and neck problems, and neuropathy in her hands and feet. (ECF No. 14-2, p. 38; ECF 14-4, pp. 4, 40; ECF No. 14-5, pp. 2-17, 26-32; ECF No. 14-6, pp. 9, 18-19). The

---

[1] Kilolo Kijakazi became Acting Commissioner of the Social Security Administration on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Commissioner denied Plaintiff's applications initially and on reconsideration. (ECF No. 14-4, pp. 2-8, 11-15). At Plaintiff's request (*Id*. at 16-17), an administrative hearing was held on December 31, 2017. (ECF No. 14-2, pp. 32-54). Plaintiff was present and represented by counsel. At the hearing, the Plaintiff amended her onset date to December 31, 2017, and she withdrew her request to reopen her prior claim. (*Id*. at 35).

Plaintiff was 49 years old on her amended alleged onset date and possessed a GED. (ECF No. 14-2, pp. 22, 38; ECF No. 14-6, p. 10). Although she had past relevant work experience as a cashier, cook, business owner, kitchen manager, and tax preparer, she performed no substantial gainful activity after her alleged onset date. (*Id*.; ECF No. 14-6, pp. 28-35).

On September 5, 2019, the ALJ found Plaintiff's lupus, obesity, spine disorders (degenerative disc disease and levoscoliosis), inflammatory arthritis in the hands, depressive disorder, and anxiety disorder to be severe impairments. (ECF No. 14-2, p. 14). He concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 15). Further, the ALJ found she could still perform light work as defined in the regulations but requiring only frequent handling and finger and occasional balancing, stooping, kneeling, crouching, crawling, and climbing. (*Id*. at 17). From a mental perspective, the ALJ restricted Plaintiff to unskilled jobs where the interpersonal contact is incidental to the work performed; the complexity of the tasks is learned and performed by rote with few variables and little judgment; and the supervision is simple, direct, and concrete. (*Id*.). With the assistance of a vocational expert, the ALJ determined Plaintiff could perform work as a power screwdriver operator, a can filing and closing machine tender, and a compression molding machine tender. (*Id*. at 23).

On May 26, 2020, the Appeals Council denied Plaintiff's request for review (ECF No. 14-2, pp. 2-7), and Plaintiff subsequently filed her Complaint (ECF No. 2) to initiate this action. Both parties have now filed appeal briefs (ECF Nos. 17, 18), and the matter is ripe for resolution. The case has been referred to the undersigned for Report and Recommendation.

## II.     Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and

laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The fact finder only considers Plaintiff's age, education, and work experience in the light of her residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.  Discussion

Plaintiff raises three issues on appeal: (1) whether the ALJ fully and fairly developed the record, (2) whether the ALJ conducted a proper assessment of Plaintiff's subjective complaints, and (3) whether the ALJ's RFC determination is supported by substantial evidence.

#### A.  Duty to Develop the Record

Plaintiff first contends that the case must be remanded because the ALJ failed to obtain more recent RFC assessments from treating and non-examining consultants. She asserts that the non-examining physicians were not privy to later acquired medical evidence documenting a deterioration in her condition. While the ALJ does owe a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts, the ALJ is only required to develop a reasonably complete record. *See Stormo v. Barnhart*, 377 F.3d

801, 806 (8th Cir. 2004); *see also Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (citing *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994)). While "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted).

Relying on *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), Plaintiff claims the ALJ violated his duty to develop the record when he failed to obtain recent RFC assessments from a treating or examining source. However, the Eighth Circuit has since narrowed the *Nevland* ruling, rejecting a Plaintiff's claim that the RFC determination must be supported by treating or examining source opinion evidence. *Harvey v. Colvin*, 839 F.3d 714, 717 (8th Cir. 2016). Therefore, while some medical evidence is required, a treating or examining source's opinion is not required to uphold an RFC finding. *See, e.g.*, *Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) (rejecting claim of error despite no RFC opinion from a treating or consultative physician); *Mabry v. Colvin*, 815 F.3d 386, 390-91 (8th Cir. 2016); *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) (affirming the physical RFC finding despite no medical opinion evidence). In fact, "in evaluating a claimant's RFC, an ALJ is not [even] limited to considering medical evidence exclusively." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). And the ALJ is entitled to rely on the opinion of a non-examining consultant, even if subsequent medical records reveal new diagnoses. *See Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007).

At the outset, we note that most of the medical evidence contained in the record predates Plaintiff's amended alleged onset date of December 31, 2017. Because the Plaintiff did not amend her onset date until the administrative hearing, the RFC assessments completed by the non-

examining consultants are included in this predated material. Thus, an examination of this evidence, is necessary to lay the predicate for the impairments Plaintiff contends were disabling during the relevant period. *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) (evidence dated outside the relevant period can be used to help "elucidate a medical condition during the time for which benefits might be rewarded.").

X-rays of her pelvis and lumbar and cervical spine, conducted on November 30, 2015, revealed mild degenerative arthritis of the hips; moderate degenerative disc disease of her lumbar spine with mild change in the mid to lower lumbar spine; and severe degenerative disk disease of the lower cervical spine from C5 to the C7 level. (ECF No. 14-7, pp. 2, 5-6, 21, 25-26, 134).

Due to a longstanding history of back and neck pain, on January 29, 2016, Plaintiff submitted to MRIs of her cervical and lumbar spine. (ECF No. 14-7, pp. 6-9, 23-25, 140-142). Cervical testing revealed multilevel degenerative disc disease; marginal spondylosis; dorsal bony ridging and mild disc protrusion at the C5-6 and C6-7 levels; mild spinal canal stenosis at the C5-6 level; minimal canal stenosis at the C6-7 level; left posterolateral disc protrusion at the C4-5 level; inferior extrusion of disc material contributing to moderate-to-severe bilateral foraminal stenosis at the C5-6 level; bilateral foraminal stenosis at the C6-7 level, right greater than left; and mild right foraminal stenosis at the C3-4 level due to uncovertebral spurring. Images of the lumbar spine showed mild levoscoliosis; multilevel degenerative disease; marginal spondylosis; facet arthropathy with moderate size focal disc herniations paracentrally and posterolaterally on the right with spinal canal/lateral recess stenosis; a probable displacement of the passing right L2 nerve root without definite compression of any of the nerve roots and mild spinal canal stenosis; mild spinal canal stenosis at the L4-5 level due to a combination of mild broad disc protrusion and facet hypertrophy; mild broad disc protrusion at the L2-3 and L3-4 levels without canal stenosis; and

mild right foraminal stenosis at the L2-3 level.  For this, orthopedist, Thomas Cheyne, recommended conservative treatment via prescription pain medication and a trial of epidural steroid injections ("ESIs") in either the cervical or lumbar spine.  (ECF No. 14-7, pp. 4, 18, 137, 138).  Records indicate Plaintiff received one cervical ESI from a pain specialist, Brian Goodman, in March 2016, but she did not return for further injections until November 2017, at which time Dr. Goodman administered an ESI in her lumbar spine.  (*Id*. at 17-18; ECF No. 14-8, pp. 100-104).  There is, however, no indication that the Plaintiff ever returned for additional ESIs, although Dr. Cheyne ordered a series of three injections.  (ECF No. 14-7, p. 138).

On August 16, 2017, Plaintiff was treated by rheumatologist, Roy Sampson, for widespread joint pain, fatigue, swelling in her hands and feet, and "sores all over [her] body."  (ECF No. 14-7, pp. 163-167).  She reported a 15-year history of lupus, diagnosed via a biopsy of her skin rash.  However, those results were somehow lost, and Plaintiff admitted she had never been treated for lupus.  Calamine lotion and alcohol helped a little, but steroid creams did not.  Plaintiff rated her pain as an 8 on a 10-point scale.  Weather changes reportedly aggravated her pain, while Tramadol was helpful.  On exam, Dr. Sampson noted a scaly rash on her right ear and scalp, a patchy erythematous rash on her scalp, and small excoriation-like spots of rash on her arms and trunk.  Plaintiff also exhibited mild diffuse tenderness to palpation with a good range of motion in the shoulders, elbows, wrists, metacarpophalangeal joints ("MCPs"), proximal interphalangeal joints ("PIPs"), hips, knees, ankles, and feet.  Based on this exam and a positive antinuclear antibody test, Dr. Sampson diagnosed an elevated rheumatoid factor, pain in both hands, an atypical rash, fatigue, and bilateral foot pain.  He then ordered x-rays of her feet and hands, which were ultimately normal, and advised her to quit smoking.  (ECF No. 14-7, pp. 150, 152).

On August 31, 2017, non-examining physician, Brett Alberty, reviewed the record and concluded Plaintiff could perform light work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (ECF No. 14-3, pp. 13-15).

On October 2, 2017, Plaintiff returned to Dr. Sampson regarding the pain in her hands and feet. (ECF No. 14-7, pp. 148-162). Plaintiff rated her pain as an 8/10, indicating that Ibuprofen "occasionally" helped, and Tramadol was "sometimes" helpful. On exam, Plaintiff exhibited a scaly rash on the right ear and scalp, mild diffuse tenderness to palpation in the shoulders, elbows, and wrists with a good range of motion, and mild diffuse tenderness to palpation in the MCPs and PIPs. No tenderness was noted in the carpometacarpal joints ("CMCs") or distal interphalangeal joints ("DIPs"). Dr. Sampson diagnosed rheumatoid arthritis involving both hands with a positive rheumatoid factor and high-risk medication use. He prescribed folic acid, Methotrexate, and Tramadol and referred her to Johnson Dermatology.

On October 19, 2017, Plaintiff conferred with dermatologist, Sandra Johnson, regarding her chronic rash. (ECF No. 14-8, pp. 89-92). On exam, Dr. Johnson noted banal appearing fleshy papules consistent with intradermal nevus; red vascular papules on the left jawline consistent with angioma; and red/purple papules on the arms, shoulders, face, and chest consistent with lupus versus subacute cutaneous lupus erythematosus. These papules were biopsied, revealing lichenoid dermatitis with associated squamous hyperplasia, moderate superficial perivascular and lichenoid infiltrate of lymphocytes in the upper dermis associated with apoptotic cells in the basilar epidermis, mild deep perivascular infiltrate of lymphocytes and rare plasma cell, and possible interstitial mucin in the dermis, especially around the eccrine coils. (*Id*. at 99). Pathology concluded that based on her history, a diagnosis of verrucous lupus was highly probable. Dr. Johnson recommended the use of Fluocinonide cream on all areas except the face. (*Id*. at 89-92).

Judith Forte affirmed Dr. Alberty's assessment on November 29, 2017. (ECF No. 14-3, pp. 50-52).

Although Plaintiff claims that her condition deteriorated after Drs. Alberty and Forte reviewed the record, treatment records dated after November 2017 suggest otherwise. On January 17, 2018, Dr. Johnson confirmed a diagnosis of discoid lupus erythematosus of the arms, back, chest, and face. (ECF No. 14-8, pp. 92-94). Despite Dr. Sampson's comment that she did not meet the criteria for systemic lupus, Plaintiff told Dr. Johnson that Dr. Sampson was managing her systemic lupus. She prescribed Fluocinonide cream, Hydroxychloroquine Sulfate, and Prednisone.

On February 7, 2018, Plaintiff's condition remained unchanged. (ECF No. 14-8, pp. 94-96). Dr. Johnson prescribed Calcipotriene cream, Gabapentin (to treat neuropathic itching), and Triamcinolone Acetonide cream.

Plaintiff's next appointment with Dr. Johnson occurred on June 15, 2018. (ECF No. 14-8, pp. 97-98). She reported that the overall severity of her condition was worsening. Dr. Johnson noted that her excoriated macules were in various stages of healing, and her mental status exam was normal. She again prescribed Gabapentin and Triamcinolone Acetonide cream.

Plaintiff was assessed by Dr. Brent Witherington at Perspectives Behavioral Health Management on June 22, 2018. (ECF No. 14-8, pp. 105-111). She described the loss of her husband in 2015, followed by the loss of her infant grandson six months later, and the fact that her son had taken both her home and her dog. Plaintiff no longer saw her children or grandchildren, as she was living with her sister. Dr. Witherington noted that her mood was depressed and "itchy" with a sad affect. She had no cognitive impairment and appropriate judgment and insight. He diagnosed major depressive disorder and amphetamine-type substance use disorder in early

remission and prescribed Latuda to augment her Paxil. Dr. Witherington also encouraged therapy and daily exercise.

On August 1, 2018, Dr. Witherington noted Plaintiff was supposed to return two weeks after her last appointment but failed to do so. (ECF No. 14-8, pp. 112-119). Additionally, she had not seen her therapist since June. Plaintiff was now out of Latuda, although she indicated the medication did not help. However, she also denied experiencing any medication side effects. Overall, she felt hopeless and worthless because she and her sister were looking for a new place to live. Their current home was owned by her sister's ex-boyfriend. Dr. Witherington noted a depressed mood with a sad affect and prescribed Rexulti.

On September 5, 2018, Nurse Practitioner Laura A. Henson treated the Plaintiff for upper respiratory symptoms, sores inside her lower lip, back pain, and urinary hesitancy and urgency. (ECF No. 14-8, pp. 124-152). Plaintiff thought she had a urinary tract infection. An exam revealed rhonchi in both fields of both lungs. She also had three blisters on her inner lower lip. However, Plaintiff exhibited a normal range of motion in all areas tested and normal coordination. Her mood, affect, behavior, judgment, and thought content were also within normal limits. Nurse Henson diagnosed urinary hesitancy, lupus erythematosus, acute bronchitis, mouth sores, situational reactive depression, and rheumatoid arthritis. She then prescribed a Z-pack and a trial of Acyclovir and refilled Plaintiff's Albuterol inhaler.

After reviewing this evidence, the undersigned is resolved that the ALJ had ample evidence upon which to base an informed decision. Further, given the absence of medical evidence dated during the relevant period to negate the RFC assessments of the non-examining consultants, the ALJ was not required to order additional assessments.

Plaintiff has also failed to show any prejudice resulting from the ALJ's failure to order the requested exams and assessments. *See Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). There is no indication that additional records exist that are not included in the record and, despite having the opportunity to request Medical Source Statements from her treating physicians, Plaintiff has submitted no opinion evidence to support her claim that the RFC assessments of record do not account for all her impairments. (ECF No. 14-2, p. 47). *See Weber v. Barnhart*, 348 F.3d 723, 725-26 (8th Cir. 2003) (noting the claimant failed to obtain the evidence at issue during the appellate process to show that it warranted remand). In the absence of such evidence, the Court cannot say the Plaintiff has suffered harm.

### B. Subjective Complaints

Plaintiff also insists that the ALJ failed to properly evaluate her subjective complaints. The ALJ is required to consider all the evidence relating to Plaintiff's subjective complaints, including: (1) her daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitation and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In so doing, the ALJ must also consider the claimant's prior work record, observations made by third parties, and the opinions of treating and examining physicians." *Id*. However, an ALJ need not expressly discuss, as opposed to consider, each *Polaski* factor. *See Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011); *Casey*, 503 F.3d at 695.

An ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them. *Polaski*, 739 F.2d at 1322. However, "[a]n ALJ . . . may disbelieve subjective reports because of inherent inconsistencies or other circumstances." *Wright v. Colvin*,

789 F.3d 847, 853 (8th Cir. 2015) (citing *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted)).

In the present case, the ALJ properly considered Plaintiff's subjective complaints. He noted that she received only minimal treatment for her impairments during the relevant period. From December 31, 2017, to September 5, 2019, Plaintiff received treatment on only four occasions for her physical impairments. (ECF No. 14-8, pp. 92-98). The Eighth Circuit has consistently held that such a lack of treatment is inconsistent with allegations of disabling symptoms. *See Buford*, 824 F.3d at 796-97 (holding the ALJ properly considered the claimant's "lack of consistent ongoing treatment"); *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012) (noting a claimant's lack of treatment during the relevant period undercut claim of disabling symptoms). Had her inflammatory arthritis and spinal impairments been as severe as alleged, we believe she would have sought out more treatment.

Plaintiff attempts to justify her lack of treatment by alleging she could not afford to obtain medical treatment; however, she was covered by Medicaid before and during the relevant period. (ECF No. 14-2, p. 45; ECF No. 14-8, pp. 125, 140-151). Further, there is also no evidence in the record to indicate she ever sought out free or low-cost medical treatment or was denied treatment for financial reasons. *See Osborne v. Barnhart*, 316 F.3d 809, 812 (8th Cir. 2003); *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999). Although she did stay in a homeless shelter for a short time, Plaintiff primarily stayed with her sister and a friend, after her son and daughter-in-law evicted her from their home. She also managed to afford both cigarettes and marijuana, despite her alleged financial limitations. (ECF No. 14-8, pp. 15, 106, 116, 122, 126). *See Riggins*, 177 F.3d at 693 (noting the claimant alleged an inability to afford medication but was able to continue

smoking). For these reasons, we find Plaintiff's attempt to mitigate her lack of treatment to be unconvincing.

In addition to her lack of treatment, the ALJ also properly considered the objective imaging and exam findings, noting that they were inconsistent with Plaintiff's reports of disabling pain and fatigue. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). He acknowledged her MRI results, but again noted that she only sought out treatment for her physical complaints, including back pain, on four occasions during the relevant period. During those appointments, the doctors noted only mild, diffuse tenderness in her extremities. Despite this, her gait was steady and within normal limits and no range of motion deficits were documented. (ECF No. 14-8, pp. 17-45). Moreover, in June 2018, during a mental exam, Plaintiff denied muscle weakness or pain, joint pain, or limitation of motion. (*Id*. at 105-111).

Regarding her inflammatory arthritis, the ALJ noted that x-rays of her hands and feet were normal. Despite her contention that she suffered with neuropathy in her upper and lower extremities and frequently dropped things, physical exams were benign, revealing only mild, diffuse tenderness with a good range of motion in the shoulders, elbows, wrists, MCPs, PIPs, hips, knees, ankles, and feet. (ECF No. 14-7, pp. 148-161, 163-167). *See Buford*, 824 F.3d at 796-97 (noting objective evidence undercut the alleged degree of limitation). There is simply no evidence to document a loss of grip or hand strength to support her allegations. Moreover, aside from her own self reports, there is no evidence to document any sensory abnormalities, weakness, or atrophy in her extremities.

Plaintiff also received only conservative treatment for her impairments, which included medication and ESIs. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (holding conservative treatment is inconsistent with disability). The record indicates that her condition

13

required no emergency room visits or hospitalizations, and despite her testimony that Dr. Sampson diagnosed carpal tunnel syndrome and recommended surgery, there is nothing in the record to document this diagnosis or to indicate that surgical intervention was advised. (ECF No. 14-2, p. 46). In fact, after being prescribed Methotrexate for her inflammatory arthritis, Plaintiff did not seek out further treatment for this impairment. This suggests that her inflammatory arthritis was at least somewhat responsive to the medication prescribed. *Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). And there is no requirement that the Plaintiff be able to return to work pain-free. *Cruse v. Bowen*, 867 F.2d 1183, 1186 (8th Cir. 1989) (citing *Brown v. Bowen*, 794 F.2d 703, 707 (D.C. Cir. 1986) and *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980)).

The ALJ did credit Plaintiff's medication side effects, which included fatigue and difficulty focusing. (*Id*. at 21). In so doing, he adequately accounted for the resulting limitations by restricting her to performing work where the interpersonal contact is incidental to the work performed, the complexity of the tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct, and concrete.

As for Plaintiff's activities of daily living, she reported the ability to care for her personal hygiene unassisted, prepare simple meals several times per week, occasionally clean up the house and wash dishes "with breaks," sit and watch her grandchildren play outside, handle her personal finances, and attend church weekly. (ECF No. 14-6, pp. 20-27). On her function report, however, Plaintiff also stated that she did not cook very often because she could not stand for long periods of time and frequently lost her focus. (ECF No. 14-6, p. 24). *See Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (ALJ may discount subjective complaints if the evidence as a whole is inconsistent with Plaintiff's testimony).

Additionally, in 2016, Plaintiff reported that her 8-year-old granddaughter lived with her due to her daughter's drug use. (ECF No. 14-7, pp. 36-39, 43-45). And, at the administrative hearing, she testified that she cared for her dog. (ECF No. 14-2, p. 44). Further, while staying at the homeless shelter she cleaned the counters and the sinks in the bathroom each morning. (*Id*. at 49). When asked if she required accommodations, Plaintiff said she had to wear gloves because she could not handle other people's germs. Although these activities do not necessarily undermine Plaintiff's claim of disability, the level of restriction she has alleged in her testimony and on her function reports is simply not supported by the overall record. The only doctor to recommend activity limitations was Dr. Cheyne, who advised her to stay on light activity.

Therefore, we find that the ALJ articulated legally sufficient rationale for giving less than full credence to Plaintiff's claims of disabling pain and fatigue and, the ALJ's assessment is entitled to deference. *See Casey*, 503 F.3d at 695; *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).

### C. RFC Determination

Lastly, the Plaintiff argues that the ALJ's RFC determination is flawed. She contends that the ALJ relied on the non-examining physicians' assessment of light work to prevent the disability finding directed by the Medical-Vocational Guidelines if he found her capable of only sedentary work.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. However, the disability claimant, rather than the ALJ, has the burden of establishing her RFC. *Vossen*, 612 F. 3d at 1016. "The ALJ [then] determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d

15

963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by some medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

As discussed in the previous section, the medical evidence does not support Plaintiff's contention that the ALJ's RFC determination is flawed. And, the Plaintiff has failed to cite to evidence that supports her contention she can only perform sedentary work with occasional handling and fingering. While we are sensitive to her rheumatoid/inflammatory arthritis diagnosis, a mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

Prior to her amended alleged onset date, Dr. Cheyne reviewed her cervical and lumbar MRIs in 2016 and advised Plaintiff to "stay at light activity." In August 2017, Dr. Alberty reviewed the record and concluded Plaintiff could perform light work with no postural or manipulative restrictions. Dr. Forte reviewed the record in November and affirmed Dr. Alberty's assessment. In June and August 2018, following documentation of a normal physical exam, Dr. Witherington recommended she establish and maintain a daily exercise regimen. And, the following month, a musculoskeletal exam revealed a full musculoskeletal range of motion, no edema, and no neurological deficits. In fact, the only abnormality ever noted on exam was mild,

diffuse tenderness in the extremities. No functional restrictions were ever documented, and we can find no evidence to show that the Plaintiff reported any self-imposed functional limitations to her doctors. Therefore, when combined with the limited medical treatment sought out and the conservative nature of the treatment received, we find substantial evidence to support the ALJ's determination that the Plaintiff could perform light work with mental restrictions.

Likewise, Plaintiff has cited no evidence to support her claim that she can only occasionally handle or finger. Instead, she merely restates her argument that the assessments of Drs. Alberty and Forte are outdated, as they predate her arthritis diagnosis. The ALJ, however, considered the subsequent evidence of rheumatoid arthritis in Plaintiff's hands and included an RFC restriction to frequent, but not constant, handling and fingering. Contrary to Plaintiff's argument, there is no requirement that each RFC restriction be supported by a specific medical opinion. *See Hensley*, 829 F.3d at 932; *see also Buford*, 824 F.3d at 796-97 (holding the ALJ properly considered the claimant's "lack of consistent ongoing treatment" as a factor in determining RFC). And, given the lack of evidence to document limitations in the hands, we find substantial evidence in the record to support the ALJ's RFC determination.

### IV. Conclusion

For the reasons and upon the authorities discussed above, it is recommended that the ALJ's decision be affirmed, and that the Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 16th day of August 2021.

/s/ Mark E. Ford
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE